[Cite as *State v. Powell*, 2019-Ohio-2148.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                          Court of Appeals No. L-17-1287

        Appellee                                    Trial Court No. CR0201602439

v.

Hazel Alyson Powell                              **DECISION AND JUDGMENT**

        Appellant                                    Decided:  May 31, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from an October 24, 2017 judgment of the Lucas County

Court of Common Pleas, sentencing appellant to a nine-year total term of incarceration,

following appellant's conviction on one count of attempted murder, in violation of R.C.

2923.02, a felony of the first degree.

{¶ 2} The trial court sentenced appellant to a six-year term of incarceration, to be

served consecutively with a three-year sentence on the accompanying firearm

specification. For the reasons set forth below, this court affirms the judgment of the trial court.

{¶ 3} Appellant, Hazel Powell, sets forth the following two assignments of error:

The trial court did not comply with R.C. 2929.11 and 2929.12 in sentencing Appellant to nine years in the Ohio Department of Rehabilitation and Corrections.

The trial court committed error to the prejudice of Appellant by imposing costs of prosecution without consideration of Appellant's ability to pay.

{¶ 4} The following undisputed facts are relevant to this appeal. On July 11, 2016, the Toledo Police Department was dispatched to the former Bretz nightclub in downtown Toledo. Upon arrival at the scene, a female victim was discovered lying in the street outside of the club suffering from multiple gunshot wounds.

{¶ 5} Emergency responders could not detect a pulse or respiration by the victim. They immediately began to perform CPR. The victim was stabilized and then transported for emergency medical treatment. As a result of this shooting, the victim suffered serious bodily injuries. Most significantly, as a result of the severe leg injuries sustained in the shooting, the victim is now confined to a wheelchair.

{¶ 6} The record reflects that numerous eyewitnesses were present in immediate proximity to the shooting. During the ensuing witness interviews, the investigating

2.

officers learned that the victim had been repeatedly shot at close range by appellant, with whom the victim had previously been involved in a relationship.

{¶ 7} The victim had been standing outside of the nightclub with a group of friends gathered to celebrate a birthday. Appellant arrived shortly thereafter, confronted the victim, drove away several times, but then returned and escalated the situation. The victim took out her mobile phone and began recording the incident.

{¶ 8} Immediately prior to the shooting, appellant made a deliberate, three-point turn in her car, and drove back to confront the victim one final time. Appellant got out of her vehicle, brandished a loaded 9 mm gun at the victim, yelled out the victim's name, stated words to the effect of, "[H]ere you go bitch," and then fired four shots.

{¶ 9} Two shots were fired directly at the victim and two shots were fired towards another woman who had begun to flee for her safety. Both shots targeting the victim struck her in the chest, while the other shots fortunately did not strike any of the bystanders. Video footage recovered from the exterior surveillance cameras of the nightclub and a sign company located directly across the street captured these events.

{¶ 10} The record reflects that although appellant had maintained at trial that the victim had "something shiny" in her hand prior to the shooting, thereby suggesting that the victim had been armed, there is no evidence whatsoever in support of appellant's suggestion that the victim was armed.

{¶ 11} In conjunction with this, the record further reflects that appellant unconvincingly testified that, "I fired my weapon because I was scared, and I just wanted

3.

them to leave me alone." Appellant's own conduct in leaving the scene, then voluntarily returning several times to resume the confrontation, refutes appellant's portrayal of the events preceding the shooting.

{¶ 12} The report prepared by the paramedic who responded to the scene summarized the critical nature of the victim's medical condition. The report stated, "Patient found lying supine in the middle of the street pulseless and agonal respirations. Patient had two gunshot wounds to the chest." The shooting caused severe injuries to the victim. The victim was rendered disabled, with paralysis and confinement to a wheelchair.

{¶ 13} On August 8, 2016, appellant was indicted on one count of attempted murder, in violation of R.C. 2923.02, a felony of the first degree, with an accompanying firearm specification, and one count of felonious assault, in violation of R.C. 2911.03, a felony of the second degree, with an accompanying firearm specification.

{¶ 14} On October 23, 2017, after ongoing efforts to voluntarily resolve the matter were ultimately unsuccessful, the jury trial commenced. On October 24, 2017, both parties had completed the presentation of their cases to the trial court and the matter was ready for jury submission.

{¶ 15} Prior to the jury deliberations commencing, last-minute negotiations transpired between the parties pursuant to which a voluntary plea agreement was reached. Appellant voluntarily pled guilty to the pending count of attempted murder, in violation of R.C. 2923.02, with an accompanying firearm specification. In exchange, appellee

4.

dismissed the pending felonious assault count, in violation of R.C. 2911.03, a felony of the second degree, and the accompanying firearm specification.

{¶ 16} Following this resolution, the matter proceeded to sentencing. As an initial matter, the trial court granted appellant's request to be furnished time to visit with her mother, aunt, and a friend in the courtroom prior to being taken at the conclusion of the hearing to commence serving the sentence.

{¶ 17} Counsel for appellant next presented a statement in mitigation on appellant's behalf. Counsel acknowledged that appellant's criminal record included prior offenses connected to actions taken by appellant at the end of past relationships, but counsel urged the court to consider appellant's relative youth in the hopes that, "[W]ith age comes wisdom I do believe." Counsel then beseeched the court, "[F]or as much leniency [to appellant] as the court can give."

{¶ 18} In regards to aggravating factors, the court was next presented with a written impact statement from the victim's family. The victim declined to directly address the court. Counsel for appellee then succinctly stated to the court, "While Mr. Wingate has indicated that the defendant did not wish this to happen * * * She and she alone pulled out a firearm, and she and she alone fired[,] twice striking the victim. The victim is irreversibly harmed physically, mentally, and emotionally due to what [appellant] did." Appellee concluded by requesting that an "appropriate" sentence be imposed.

**{¶ 19}** Lastly, appellant next gave a mitigating statement on her own behalf to the trial court. Notably, although appellant apologized to her own family for the consequences of her shooting of the victim, appellant did not apologize or convey remorse to the victim or her family. Appellant conveyed, "I am deeply sorry to *my family* and everything that they have been through during this time." (Emphasis added).

**{¶ 20}** The trial court weighed the evidence, the competing sentencing arguments, and crafted a sentence. In announcing the sentence, the trial court stated in pertinent part, "You started to leave. *You came back each time.* The most startling video wasn't the one from Bretz. It was the Facebook video. Because that clearly showed your frame of mind as you pull up, get out. I mean, it was a swift movement. You pull up, you come out, *you pull up and you shoot almost in a premeditated way. There is no fear * * * because if that fear was real and legitimate or palpable, you wouldn't have turned around and made the three point turn in the first instance * * ** [Y]our motivation was vengefulness." (Emphasis added).

**{¶ 21}** The record reflects that trial court specifically emphasized this point as appellant had maintained, without evidentiary support, that appellant had repeatedly shot the victim in close range, out of appellant's own claimed, "fear for her personal safety." The trial court was not persuaded.

**{¶ 22}** The trial court sentenced appellant to a six-year term of incarceration on the attempted murder offense, consecutive to the accompanying three-year firearm specification, for a total term of incarceration of nine years. This appeal ensued.

6.

{¶ 23} In the first assignment of error, appellant maintains that although the disputed sentence lawfully falls within the permissible statutory range, it nevertheless was unlawful in violation of R.C. 2929.11 and 2929.12, the statutory directives and principles of sentencing. We do not concur.

{¶ 24} Specifically, appellant asserts in principal part that the, "[T]rial court did not properly consider mitigating factors prior to imposing a sentence that was clearly not at the low end of the sentencing range available to the court."

{¶ 25} We have carefully reviewed and considered the record from below. Contrary to appellant's assertion of an alleged failure to properly consider mitigation arguments, the record reflects that multiple parties, including appellant herself, presented extensive statements in mitigation to the trial court. The record further reflects that the trial court was not persuaded that the case warranted the maximum leniency sought by appellant.

{¶ 26} We further note that there is no statutory or governing case law in support of the proposition that an otherwise lawful sentence is fatally compromised based upon an objection to it not being at, "the low end of the sentencing range available," as suggested by appellant.

{¶ 27} The record reflects that the trial court fully considered and weighed the mitigating and aggravating factors and evidence in the course of crafting the disputed sentence. The trial court ultimately concluded that appellant's own course of conduct

7.

contradicted her unsupported assertion of fearing for her own safety prior to shooting the victim multiple times at close range with a 9 mm gun.

{¶ 28} The record also reflects past criminal offenses committed by appellant at the conclusion of prior failed relationships. Appellant's lack of remorse is evident throughout the record.

{¶ 29} The record shows that appellant drove to a location where she knew the victim to be, confronted the victim, left and returned several times, and upon the final return, exited her vehicle with a loaded 9 mm gun, fired numerous shots at the victim in close range striking the victim twice, resulting in the paralysis and disability of the victim.

{¶ 30} We find that appellant has failed to establish that the disputed sentence was contrary to the directives and principles of sentencing. The record clearly shows the seriousness of the crime, the danger posed to the public, the extreme harm to the victim, and the risk of recidivism. We find appellant's first assignment of error not well-taken.

{¶ 31} In the second assignment of error, appellant asserts that the trial court erred in imposing the costs of prosecution and confinement when sentencing appellant. We do not concur.

{¶ 32} In support of the second assignment of error, appellant incorrectly maintains that, "[T]here is no indication from the record that the trial court considered appellant's ability to pay the cost[s] of confinement prior to ordering the payment of said costs."

8.

{¶ 33} On the contrary, the transcript of the sentencing hearing reflects that the trial court explicitly determined that the, "Defendant is found to have, or reasonably may be expected to have, the means to pay all or part of the applicable costs of supervision, confinement, and prosecution as authorized by law."

{¶ 34} There are various categories of costs which the trial court can order the appellant to pay: confinement costs, costs of assigned counsel, and costs of supervision. *State v. Neal*, 6th Dist. Lucas No. L-14-1276, 2016-Ohio-854, ¶ 15.

{¶ 35} We first note that the imposition of the costs of prosecution is mandatory on all who are convicted, regardless of indigency or other claimed considerations. R.C. 2947.23(A)(1).

{¶ 36} With respect to the cost of confinement, R.C. 2929.18(A)(1)(a)(ii) establishes in pertinent part that, "Financial sanctions that may be imposed pursuant to this section include * * * reimbursement by the offender of any or all of the cost of sanctions incurred by the government, *including * * * all or part of the cost of confinement*." (Emphasis added).

{¶ 37} It is well-established that the findings of a sentencing court on costs will be upheld so long as the record encompasses some supporting clear and convincing evidence. *State v. Nobles*, 6th Dist. Lucas No. L-15-1273, 2016-Ohio-7529, ¶ 9.

{¶ 38} We note that the record clearly reflects that appellant is an able-bodied 33-year old, with no disabilities precluding gainful employment upon release. As such, the trial court's explicit finding that, "Defendant is found to have, or reasonably be expected

9.

to have, the means to pay all or part of the applicable costs," was supported by clear and convincing evidence. Accordingly, we find appellant's second assignment of error not well-taken.

{¶ 39} On consideration whereof, we find that substantial justice has been done in this matter. The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.